UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Melvin M. Stoddard,

       Plaintiff,

v.                                                                              MEMORANDUM OPINION
                                                                        AND ORDER
                                                                       Civil No. 06-279

S.D. Warren Company, and
Sappi Fine Paper North America,

       Defendants.

_____

       James W. Balmer, Falsani, Balmer, Peterson Quinn & Beyer for and on behalf of Plaintiff.

       Daniel L. Palmquist and Amy Walsh Kern, Leonard, Street and Deinard, Professional Association for and on behalf of Defendants.

_____

       Before the Court are cross motions for summary judgment.

Background

       S.D. Warren Company manufactures coated fine paper, and does business under the name Sappi Fine Paper North America.  Sappi purchased a paper mill located in Cloquet, Minnesota from Potlach Corporation.

       Plaintiff began employment with Potlach in 1975.  His duties included sawmill operator, material handler, pumper, fuel handler and bark operator.  When Sappi purchased Potlach in 2002, Plaintiff was on medical leave due to a work-related injury.  On August 19, 2002, Plaintiff returned to work as a bark

1

operator, with no medical restrictions as to this position. On November 5, 2002, Plaintiff was found sleeping at his desk when he was supposed to be at work. He was terminated on November 11, 2002.

On October 10, 2003, Plaintiff submitted an Application for Estimated Retirement Allowances under the S.D. Warren Company Central Mills Employees Retirement Plan (the "Plan"). Joint Appendix (hereinafter "A.") at 372. Pursuant to the Plan, employees with 15 years experience are eligible for disability benefits if they become totally and permanently disabled. The Plan defines "disability" as:

> a physical or mental disability as a result of which a member is wholly and continuously unable to engage in any occupation or perform any work for any kind of compensation of financial value, unless such disability (i) was contracted, suffered or incurred while the Member was engaged in or resulted from the Member's having engaged in a criminal act, (ii) resulted from a deliberately self-inflicted injury, or (iii) was contracted, suffered or incurred while in the service of the armed forces of any country. Any such disability must have existed while employed by the Employer and must be certified by a licensed physician approved by the Employer to be such as can reasonably be expected to continue during the remainder of the Member's lifetime.

A. at 72.

By letter dated May 17, 2004, Plaintiff was notified that his application for disability benefits had been denied, "because the documentation does not satisfy the definition of Total and Permanent Disability as defined in the S.D. Warren Company Central Mills Employees Retirement Plan." A. at 13. Michael Hennessey, Sappi's Corporate Benefits Manager and the designee under the Plan

to review applications for disability benefits, found that Plaintiff had failed to provide proof that he was totally and permanently disabled on the date of his termination. "Key factors" in this decision were the AETNA Attending Physician's Statement filed with the application which noted that Plaintiff was capable of light work and was a viable candidate for vocational rehabilitation, and Hennessey's finding that Plaintiff was actively employed until termination. Id. Other materials reviewed by Hennessey included the Social Security Administration determination, favorable to Plaintiff; the psychological evaluation conducted by Harold Vinnes; and Dr. Person's medical evaluation. Id.

Plaintiff requested review of this decision, and submitted additional documents to support his claim. Such additional documentation included the vocational report from Kandise Garrison. Ms. Garrison concluded that based on the fact that he was not able to perform any of his prior work, and

> [b]ecause no job match can be found using Mr. Stoddard's work experience, educational level, wages and transferable skills, coupling those with the sedentary physical abilities, he is not employable and is, in my opinion, permanently and totally disabled from employment. Retraining is not an option due to Mr. Stoddard's need to improve his basic skills, his lack of transferable skills to sedentary work and his age and the condition of the local market.

A. at 31.

Other additional documents reviewed included a report from Michael Folsted, Division of Rehabilitation Services, and e-mails and memos from Sharon

3

Manns to Hennessey, a letter dated June 8, 2004 from attorney James Balmer to Michael Greed, and a May 17, 2004 letter from Hennessey to Plaintiff.

By letter dated December 14, 2004, Plaintiff was notified that the Administrative Committee of the Plan had met regarding his appeal, and that based on its review of the above identified documents, the Committee had decided to uphold the decision to deny his application for disability benefits.  A. at 3.  In particular, the Committee noted that it "was persuaded by the following information: You were gainfully employed at the time of your termination."  Id. Plaintiff was also notified that he had exhausted his administrative remedies and that he was free to file a civil action under ERISA.  A. at 4.  Plaintiff then filed this action.

Plaintiff challenges the decision of the Plan to deny his application for disability benefits. It is his position that the Plan Administrator has a conflict of interest, which requires the Court to apply a less deferential standard of review to the decision to deny benefits.  See, Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998).  Plaintiff further argues that this conflict caused a breach of the Plan's fiduciary duty to Plaintiff, warranting a less deferential standard of review. Plaintiff asserts that in this case, the Plan engaged in egregious conduct when it denied his request for disability benefits based on the fact that he was employed at the time of his termination.

Defendants respond that the appropriate standard of review is abuse of discretion, and that under this standard the decision is supported by substantial evidence.

Standard of Review

Under ERISA, Plaintiff has the right to seek judicial review of a benefits determination. 29 U.S.C. § 1132(a)(1)(B). Where a plan provides its administrator "discretionary authority to determine eligibility for benefits", the administrator's decision as to benefits is reviewed for an abuse of discretion. Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998). A less deferential review may be appropriate where: 1) the plan administrator has a conflict of interest, or a procedural irregularity exists; 2) that has caused a serious breach of the plan administrator's fiduciary duty to the claimant. Id. To establish the second factor, the plaintiff need only show that the conflict or procedural irregularity had "some connection" to the denial of benefits. Id.

A plan administrator that is also the insurer is deemed to have a financial conflict, since the plan would financially benefit from a denial of benefits. Id. at 1161. In such situations, a less deferential review may be warranted. Id. In addition, a less deferential review may be warranted where the plan denies benefits without seeking an independent medical review or if the plan administrator failed to thoroughly investigate a claim or to use proper judgment.

5

Id.

Defendants do not dispute that in this case, Sappi stands in the dual role of Plan Administrator and Insurer. Defendants do challenge whether a less deferential standard of review should nevertheless be applied in this case. The Eighth Circuit has held that a conflict of interest will not warrant a less deferential standard of review unless the evidence gives rise to "serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim." Barnhart v. UNUM Life Insurance Company of America, 179 F.3d 583, 589 (8th Cir. 1999) (citing Layes v. Mead Corp., 132 F.3d 1246, 1250 (8th Cir. 1998)). Defendants assert that Plaintiff has failed to put forth any such evidence. The Court disagrees.

In both the initial decision to deny benefits, and the appeal of said decision, Defendants informed Plaintiff that a primary basis for the denial of benefits was the fact that he was actively employed at the time of his termination. See A. at 3 and 13. Basing the decision to deny benefits on this fact produces an arbitrary result, however, given the evidence that indicates Plaintiff was terminated *because* of his disability.

There is no dispute that Plaintiff was terminated because he was found asleep on the job. Further, the record clearly establishes that Plaintiff had been diagnosed with sleep apnea prior to his termination. In his evaluation, Dr. Person

noted that after Plaintiff had returned to work after a prior medical leave:

> [h]e worked with them from April 19 to November 11, 2002. At that time he was discharged; this was not because of his musculoskeletal system, but rather because he had sleep apnea. For that reason he was not thought to be safe, and he was discharged.

A. at 40. Even if Sappi was unaware of Plaintiff's sleep apnea at the time of his termination, the Plan was nonetheless aware at the time it reviewed Plaintiff's application for disability benefits that Plaintiff had been diagnosed with sleep apnea prior to his termination, and that his sleep apnea likely caused him to fall asleep on the job. See A. at 17, 23, 28 and 40.

The Court thus finds that the decision to deny disability benefits, primarily based on the fact that he was actively employed at the time of termination, was arbitrary when the evidence indicates his disability led to his termination.

In addition, the fact that Plaintiff was employed at the time of his termination, in and of itself, cannot be the basis for a denial of benefits, when employment is a prerequisite to such benefits. A. at 72.

Under these particular circumstances, the Court finds that the Plan engaged in egregious conduct, and that it's decision will only be upheld if it is based on "substantial evidence bordering on a preponderance". Woo, 144 F.3d at 1162.

Review

Defendants assert that it did review all available information, as evidenced in the letter of December 14, 2004, and that its decision to deny benefits is

supported by this record. A. at 3. For example, in a memo from Sharon Manns to Hennessey, Manns stated that while employed at Sappi, Plaintiff was able to learn a computer program. Although he learned slowly, he did overall an excellent job. A. at 15. Furthermore, Dr. Ripp, AETNA's Attending Physician, found Plaintiff only had a slight limitation of functional capacity, and that he was capable of light work. A. at 17-18. The psychological evaluation conducted by Harold Vinnes stated Plaintiff would "need employment that requires no timely reading, writing or math computation/problem solving skills." A. at 34. Dr. Person's report also did not contain a finding that Plaintiff could not work. A. 39-50. Defendants assert that this evidence substantially supports its finding that Plaintiff did not meet the Plan's definition of disability, which requires a showing that Plaintiff was "wholly and continuously unable to engage in any occupation or perform any work for any kind of compensation . . ."

After reviewing the entire record, however, the Court finds that Defendant's decision to deny benefits is not supported by a preponderance of the evidence.

In this case, Plaintiff was awarded Social Security benefits as of January 22, 2002, based on the SSA's determination that Plaintiff was totally disabled because of his sleep apnea, bilateral shoulder and elbow impairments with chronic pain, diabetes, degenerative joint disease of the left ankle, degenerative disc disease of the lumbar spine, bilateral carpal tunnel syndrome, obesity, and a learning

disorder.  A. at 23.

Plaintiff also submitted a vocational report, the only such report in the record, that found Plaintiff was not capable of performing the full scope of his pre-injury and customary occupation, and further found no job match for his work-experience, educational level, wages and transferable skills, together with his sedentary physical abilities.  A. at 27-31.

> Because no job match can be found using [Plaintiff's] work experience, educational level, wages and transferable skills, coupling those with the sedentary physical abilities, he is not employable and is, in my opinion, permanently and totally disabled from employment.  Retraining is not considered as a viable option due to [Plaintiff's] need to improve his basic skills, his lack of transferable skills to sedentary work and his age and the condition of the local market.

A. at 31.

Although the report from Dr. Person did not contain a finding that Plaintiff could not work, what the report did include was the following:

> On November 11, 2002, [Plaintiff] was discharged from work because of a condition called sleep apnea, because it was thought that this might pose a danger to himself and others.  He was taken off work, and hasn't worked since."

A. at 45.

Because the record as a whole does not establish by a preponderance of the evidence that Plaintiff was able to work, the Plan's decision to deny benefits cannot stand.

9

Accordingly,

IT IS HEREBY ORDERED THAT Plaintiff's Motion for Summary Judgment [Doc. No. 17] is GRANTED.  Defendant's Motion for Summary Judgment [Doc. No. 20] is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Date: November 6, 2006

<u>s / Michael J. Davis</u>
Michael J. Davis
United States District Court

Civil No. 06-279